UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                     *
                                           *
DAVID PATRICK NASSIF,                      *        Case No. 6:04-bk-05593-ABB
                                           *        Chapter 7
         Debtor.                           *
                                           *
———————————————————        *
                                                   **F I L E D**
MERRILL LYNCH BUSINESS                      *
FINANCIAL SERVICES INC.,                    *      DEC 1 2 2007
                                           *
         Plaintiff,                        *      CLERK, U.S. BANKRUPTCY
                                           *        ORLANDO DIVISION
vs.                                        *
                                           *      Adv. Pro. No 6:04-ap-00180-ABB
DAVID PATRICK NASSIF                        *
A/K/A DAVID P. NASSIF,                      *
THERESA F. NASSIF, TREASURE                 *
ISLAND SUNGLASS SHOPS, INC.                 *
TREASURE ISLAND ENTERPRISES,                *
LLC AND TREASURE ISLAND                     *
INVESTMENTS, LLC,                           *
                                           *
         Defendants.                       *
                                           *
———————————————————        *

## MEMORANDUM OPINION

This case came before the Court on the August 22, 2007 Motion[1] of Plaintiff,

Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"), for Final Default or

Summary Judgment against Defendant, David Patrick Nassif ("Nassif" or

"Debtor"). The Motion seeks to bar discharge pursuant to 11 U.S.C. §§ 727(a)(3),

727(a)(4), 727(a)(5) and 727(a)(7). The issue is whether Merrill Lynch is entitled to

summary or default judgment against the Debtor, barring his discharge, for failure to

provide discovery and comply with Court Orders in this adversary proceeding. After

---

[1] Doc. No. 91.

1

reviewing the pleadings and exhibits, the Court finds that the Plaintiff has established that the Debtor should be denied a discharge pursuant to 11 U.S.C.§ § 727(a)(3), 727(a)(4) and 727(a)(5) and 727(a)(7); and Judgment will be entered for the Plaintiff.

## FINDINGS OF FACT

### *Procedural History*

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 13, 2004. The Plaintiff, Merrill Lynch Business Financial Services, Inc., ("Merrill Lynch") commenced this action against the Debtor and additional Defendants Theresa Nassif ("Mrs. Nassif") and Treasure Island Investments, LLC ("Investments"). Investments is an entity that was formed when Nassif and his two wholly-owned entities, Treasure Island Sunglass Shops, Inc. ("Sunglass Shops") and Treasure Island Enterprises, LLC ("Enterprises"), filed Chapter 7 bankruptcy petitions in April 2004.[2]    Nassif attested that: (i) he was the sole officer, director, and shareholder of Sunglass Shops; (ii) he was the only member of Enterprises; and (iii) he was the only management employee of Sunglass Shops and Enterprises.[3]

Merrill Lynch filed its Complaint in this case alleging that the Debtor should be liable for damages of $817,514.33 pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B) and (a)(4) for fraud and fraudulent transfer, and the Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a).    The Debtor filed an answer to the complaint on September 14, 2004 denying the substantive allegations.[4]

---

[2] Treasure Island Sunglass Shops, Inc. filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 16, 2004, Case No. 6:04-bk-04361-ABB.  Treasure Island  Enterprises, LLC filed for relief under Chapter 7 of the Bankruptcy Code on April 16, 2004, Case No. 6:04-bk-04366-ABB.

[3] Exh. 24 to Doc. 91 at  9-10, 14, 30; Statement of Financial Affairs, Exh. 6, 7, and 20 to Doc. 91; Debtor's Answer ¶¶4, 5, and 10.

[4] Doc. No. 9.

Merrill Lynch, over a period of several years, repeatedly requested documents including tax returns, financial statements, inventory reports and bank account records. The Court ordered discovery to be produced no later than June 20, 2005. [5] The Debtor and his wife failed to do so.

A default was entered against Investments on October 11, 2005. [6] Investments is allegedly owned by Mrs. Nassif and engaged in the sale of sunglasses – the business in which Sunglass Shops and Enterprises were involved before they filed their bankruptcy petitions. The Court again ordered discovery within 14 days of its July 9, 2007 hearing, or "default will be entered." [7] The Debtor and his wife failed to comply. A Final Default Judgment of $817,514.33 was entered against Mrs. Nassif on October 10, 2007. [8]

Merrill Lynch seeks to bar Nassif's discharge through entry of final default or summary judgment. [9] The Debtor has failed to produce documents called for by requests serviced by Merrill Lynch upon him pursuant to the July 9, 2007 Order and prior discovery requests; and refused to appear for properly noticed personal and corporate representative depositions of Sunglass Shops and Enterprises.

### *Factual Background*

Merrill Lynch made a revolving line of credit to Sunglass Shops guaranteed by Enterprises and Nassif. The Debtor admitted $835,000 was owed Merrill Lynch in his bankruptcy schedules. [10] To secure repayment of the indebtedness, Sunglass Shops provided Merrill Lynch with a security interest in all of its assets, including its inventory.

---

[5] Doc. No. 36.
[6] Doc. No. 48.
[7] Doc. No. 90.
[8] Doc. No. 97.
[9] In the alternative, Merrill Lynch seeks a final default judgment.
[10] Main Case No. 04-bk-05593-ABB, Doc. No. 12.

Sunglass Shops and Nassif provided Merrill Lynch with an inventory report (the "Inventory Report"), stating that, as of August 2003, Sunglass Shops had inventory with a retail value of approximately $9.5 million and a cost of approximately $1.9 million. The Inventory Report showed that the amount of inventory was easily sufficient to satisfy the indebtedness.

Sunglass Shops stated in its April 2004 bankruptcy schedules that it had no revenue in 2002, 2003 or 2004, inventory, accounts receivable, nor other personal property. There was no explanation of what had happened to the millions of dollars of inventory set forth on the Inventory Report that had been provided to Merrill Lynch only seven months earlier.[11]

Investments began to operate, also selling sunglasses, when the Debtor filed his bankruptcy petition. Investments, which is allegedly wholly owned by Theresa Nassif, failed to defend this action, refused to produce any documents responsive to properly served document requests (including documents showing its revenues and sources of sunglass inventory) and refused to appear for the properly noticed deposition of its corporate representative.

David Nassif submitted personal financial statements to Merrill Lynch in 1999 and 2001 reflecting hundreds of thousands of dollars in personal property.[12] His bankruptcy schedules indicate he had less than $3,500 of personal property.[13] Nassif has not explained or provided documentation to demonstrate the disposition of the personal

---

[11] Enterprises' bankruptcy case did not explain the disappearance of the Sunglass Shops inventory. To the contrary, Enterprises claimed in its Schedules and Statement of Financial Affairs that, in 2003, it had only $645,000 in total revenues, and that it had only $80,000 of inventory. (Exhibits 4 and 7 to Doc. No. 91).
[12] Exh. 9 and 10 to Doc. No. 91.
[13] Main Case No. 04-bk-05593-ABB, Doc. No. 12.

4

property and has repeatedly failed to comply with his obligations to provide financial information.

### *Nassif's Failure to Produce Tax Returns*

Nassif never produced his tax returns. He stated in his May 28, 2004 Statement of Financial Affairs, his 2002 and 2003 tax returns were being prepared to be filed during the week of June 7, 2004—over three years ago.[14] He never produced 2002, 2003 and 2004 tax returns of corporate debtors Sunglass Shops and Treasure Island Enterprises as the sole owner and manager. Merrill Lynch repeatedly requested, by document requests dating back to 2004, copies of these tax returns.[15]

Nassif repeatedly promised to produce tax returns in his first set of interrogatory answer to Merrill Lynch on April 4, 2005 and his July 5, 2005 response to Merrill Lynch's First Request for Documents.[16] Counsel for the Debtor, David McFarlin, indicated on August 13, 2007 that he had been informed by Mr. Nassif that no tax returns for 2002, 2003 or thereafter had ever been prepared or filed, and no tax returns of Sunglass Shops and Enterprises has ever been prepared or filed for 2002, 2003 or 2004.[17]

### *Nassif's Failure to Provide Financial Statements*

Nassif stated he would produce financial statements of Sunglass Shops, Enterprises, and for himself for the years 1999 to 2003 in his sworn June 20. 2005 response to Merrill Lynch's First Set of Interrogatories.[18] The financial statements were never produced.

---

[14] Id.
[15] Exh. 14 to Doc. No. 91.
[16] Exhs. 21, 22 and 23 to Doc. No. 91.
[17] Francasso Aff., ¶ 5.
[18] Exh. 21 and 22 to Doc. No.. 91, Interrogatory No. 7.

### *Nassif's Failure to Provide AmSouth Bank Statements*

Nassif testified in his deposition the sunglass inventory being sold by Investments, which was started in April 2004 when Sunglass Shops and Enterprises filed bankruptcy, was financed with a home equity line of credit that the Nassifs had obtained from AmSouth Bank.[19]    Nassif testified that periodic $5,000, $7,000 and $10,000 purchases of inventory were made for Investments under the AmSouth credit line.[20] Nassif stated that he would provide Merrill Lynch, among other things, with statements regarding his home equity line of credit with AmSouth Bank.[21]  He never did.

Nassif was asked at his deposition why those documents had not been produced. He testified, "didn't we give that to you," and that he "thought we had . . . given you information on the AmSouth . . . but . . . you didn't receive that, right?"[22]  Nassif was told that no such information was ever received, and he never produced the statements thereafter.  Merrill Lynch was ultimately required to issue a subpoena to AmSouth.[23]

The statements received from AmSouth/Regions did not reflect the $5,000, $7,000 or $10,000 inventory purchases, or that any other inventory purchases had been made, for Investments under the AmSouth line of credit.[24]  The AmSouth line of credit statements also reflect the $68,000 balance on the line of credit was paid by Nassif in 2005.[25]

---

[19] Exh. 24 to Doc. No. 91 at 80.
[20] Id.
[21] Exh. 24 to Doc. No. 91 at 71-72.
[22] Id.
[23] Exh. 25 to Doc. No. 91.  AmSouth, following a recent merger, is now known as Regions Bank.
[24] Exh. 26 to Doc. No. 91.
[25] Id.

### *Nassif's Failure to Produce Personal Bank Statements*

Nassif agreed to produce his personal bank account statements from 1999 to present in his sworn June 20, 2005 responses to Merrill Lynch's First Set of Interrogatories.[26] He never produced such bank statements.

### *Nassif's Disregard of Merrill Lynch's Discovery Requests*

Nassif was shown a deposition notice for the corporate representative of Sunglass Shops and the document request attached thereto at his March 2007 deposition. He was asked if he had looked for any of the documents sought by the document request. Nassif responded, "No, I didn't get to the documents yet."[27] No documents were produced after the deposition. He also indicated he had not provided Merrill Lynch with the documents responsive to its First Request.[28] No additional documents were received by Merrill Lynch thereafter.

### *Efforts by Merrill Lynch to Obtain Financial Information*

Upon its appearance as counsel for Merrill Lynch in this adversary proceeding, Shutt's & Bowen sent a letter to Debtor's counsel[29] seeking documents, tax returns, financial statements and inventory reports. Specifically, Shutts & Bowen requested tax returns and financial statements of Sunglass Shops and Enterprises from 2002 to 2004; financial statements, tax returns, and inventory reports of Investments; tax returns of David Nassif and Theresa Nassif from 2002 to present; and financial statements of David Nassif and Theresa Nassif from 2003 to present. Debtor's counsel represented to the

---

[26] Exh. 21 and 22 to Doc. No. 91, Interrogatory No. 4).
[27] Exh. 24 to Doc. 91 at 151-152.
[28] Exh. 24 to Doc. No. 91 at 159.
[29] Exh. 27 to Doc. No. 91.

Court that those documents would be received by Merrill Lynch within ten days at the June 4, 2007 status conference.[30]

Merrill Lynch received nothing at the end of the ten-day period. Debtor's counsel wrote that he had "no explanation" for the Debtor's failure to produce the documents, and would continue to pursue them.[31] The requested documents were never produced.

Documents explaining the missing inventory have not been produced. No tax returns of financial statements of David or Theresa Nassif for 2002, 2003 or anytime thereafter have been produced; no tax returns of Sunglass Shops have been produced for 2002, 2003 or 2004; no tax returns of Enterprises have been produced for 2002, 2003 or 2004; and no tax returns, financial statements, or inventory documents have ever been produced by Investments.[32]

### *Inability to Locate Accountants*

Sam Carcione, Michelle Werley, Megan Cocklin and Stephanie Krisanda are identified as bookkeepers and accountants for the Nassifs, Sunglass Shops and Enterprises.[33] Carcione, Werley and Cocklin were not at the addresses provided in the Debtors' Statements of Financial Affairs. Merrill Lynch's attempt at service at those addresses was unsuccessful. Merrill Lynch's counsel requested updated addresses for the accountants in emails to Debtors' counsel.[34] None have been supplied.

---

[30] Transcript of June 4, 2007 hearing, Exhibit 28 hereto, at page 4.
[31] Exh. 28 to Doc. No. 91.
[32] The documents produced earlier in this case by Sunglass Shops and Enterprises were of little use. They did not contain tax returns, financial statements and inventory records sought. They did not explain the disappearance of substantial inventory of Sunglass Shops and Enterprises. No documents explained the disposition of Nassif's personal property.
[33] Exh. 6, 7 and 20 to Doc. No. 91.
[34] Exh. 31 to Doc. No. 91.

### *Nassif's Failure to Produce Documents Regarding the Disposition of Property Reported on Pre-Bankruptcy Financial Statements*

Nassif failed to explain or produce documents showing the disposition of $400,000 cash and personal property he reported on his financial statements.[35] Neither Nassif nor his wife produced any documents indicating the disposition of personal property, despite numerous document requests calling for production of such documents.

Nassif testified that the $290,000 of personal property and automobiles reported on his 2001 financial statement consisted of a boat, two motorcycles and two cars.[36] Nassif's later testimony revealed that the boat was sold in 1982, years before the financial statement was prepared.[37] Nassif testified that his two motorcycles were sold in 2002 or 2001 for $18,000 each.[38] Nassif testified in his deposition that he could get "the exact information" regarding the sale of the two motorcycles.[39] That information had been requested by Merrill Lynch in document requests dating back to June 2005. Nassif never provided that information.

The Debtor testified that one of the two cars was a BMW 328i which he sold for $7,800[40] and the other was a 1981 Camaro allegedly worth about $40,000.[41] Nassif failed to produce any documents corroborating any of these transactions despite numerous requests.

A "Loan Receivable" was reported on his 2001 personal financial statement. Nassif later testified that he did not know what it was.[42]

---

[35] Exh. 8 and 9 to Doc. No. 91.
[36] Exh. 24 to Doc. No. 91 at p. 129.
[37] Id. at 129-130.
[38] Id. at 131-133.
[39] Id. at 132.
[40] Id. at 135-136.
[41] Id. at 137.
[42] Id. at 139-140.

Jewelry valued at $30,000 on his 1999 financial statement was described as rings and bracelets in Nassif's testimony.[43] He testified he paid $1,200 for them and gave them to his wife.[44] He also testified that his wife gave them away. No documents corroborate any of these transactions.

Furniture valued at $60,000 was reported on his 1999 financial statement. Nassif's testimony regarding the furniture was evasive. He initially testified that the furniture was sold in connection with on of his three relocations. Nassif later admitted that he had not moved at any time after the issuance of his financial statements and the alleged disposition of the furniture reported on the financials could not have been related to any move but was sold in bi-annual garage sales.[45] No evidence corroborates the disposition of the furniture.

Nassif's testimony fails to explain the disposition of the hundreds of thousands of dollars of personal property set forth in his financial statements, nor does any evidence corroborate his testimony. His testimony is not credible.

### Nassif's Refusal to Produce Documents in Response to Document Requests and Court Order

Merrill Lynch served document requests on he Debtor pursuant to the Court's July Order.[46] No documents were produced in response to the Requests. Debtor's counsel wrote a letter[47] stating the Debtor had exhausted his resources and did not have "significant" documents beyond the inadequate documents previously produced.

---

[43] Id. at 142.
[44] Id. at 142-143.
[45] Id. at 144-146.
[46] Exh. 32 to Doc. No. 91.
[47] Exh. 33 to Doc. No. 91.

### *Nassif's Refusal to Appear for Properly Noticed Depositions*

Merrill Lynch scheduled, pursuant to the Court's July 9, 2007 Order, a deposition of Nassif, a corporate representative of Sunglass Shops, and a corporate representative of Enterprises for August 15, 2007.[48]  The date was cleared with David McFarlin, Debtor's counsel, to confirm availability.[49]  Debtor's counsel sent a letter on August 9, 2007 to Merrill Lynch's counsel stating that neither Nassif, nor a corporate representative of Sunglass Shops, nor a corporate representative of Enterprises would appear for their depositions scheduled for August 15, 2007.[50]  No motion for protective order was made. Nassif and his wholly owned and controlled entities did not appear for their scheduled depositions.[51]

### *CONCLUSIONS*

The Bankruptcy Code imposes certain obligations upon those who seek bankruptcy protection. A fundamental obligation is that a debtor be forthright with the Court, the creditors, and the trustee. Fulfilling this obligation should not be difficult for a debtor. The Debtor has failed to fulfill this most basic and important obligation. He has not been forthright with the Court or his creditors.

The Debtor repeatedly failed and, in many instances refused, to provide relevant, important information to Merrill Lynch. He has repeatedly failed to provide discovery or comply with Court Orders. Specifically, he has: (i) failed to produce documents called for by requests serviced by Merrill Lynch upon him pursuant to the July 9, 2007 Order and prior discovery requests, and (ii) refused to appear for his properly noticed deposition

---

[48] Exh. 15 to Doc. No. 91.
[49] Frascasso Aff., ¶ 4.
[50] Exh. 16 to Doc. 91.
[51] Fracasso Aff., ¶ 4.

and the properly noticed corporate representative depositions of Sunglass Shops and Enterprises.

There is no credible explanation for the Debtor's failure to produce the information requested by Merrill Lynch. The Debtor indicated in his Statement of Financial Affairs that his personal 2002 and 2003 tax returns were "being prepared and would be filed the week of June 7, 2004." No tax returns have been provided in the three years this case has been pending. The Statement of Financial Affairs did not indicate any other records were anywhere but in his own possession. Likewise, there is no mention in the Statement of Financial Affairs that any records were lost, seized, or transferred. The Debtor is a sophisticated, knowledgeable businessman who knows the importance of maintaining adequate and accurate records.

The Debtor failed to make truthful disclosures and withheld material information. He never explained nor provided documentation to explain the disparity between personal financial statements provided Merrill Lynch and his bankruptcy schedules. He failed to provide tax returns and documents requested by Merrill Lynch since 2004. He failed to produce financial statements of Sunglass Shops, Enterprises and for himself for the years 1999 to 2003. The personal bank account statements requested from 1999 were never produced. The Debtor never produced the AmSouth Bank home equity line of credit statements.

The Debtor has been uncooperative with Merrill Lynch throughout this case. He failed to keep and preserve information relating to his personal and business affairs, concealed such information and impeded his creditors from ascertaining his financial condition and material business transactions. Nassif has not provided any plausible

reason why his failure to preserve and produce the information are justified under all of the circumstances of this case.

Nassif violated this Court's Order dated June 16, 2005 requiring response to discovery no later than June 20, 2005. He again failed to provide discovery in this adversary proceeding following the July 9, 2007 hearing which required the Debtor to comply with discovery within 14 days. The Court ruled that failure to comply would result in a default. Nassif requested no extensions and failed to comply. His failure to comply was willful. The Debtor is not deserving of a discharge. His discharge is due to be denied.

## CONCLUSIONS OF LAW

Granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007).[52] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A court determining entitlement to summary judgment must view all evidence and make reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). If the record as a whole, however, could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. Matusushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[52] Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056.

As to issues for which the non-moving party bears the burden of proof at trial, the movant need only establish that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325; United States v. 16 Parcel of Real Property, 320 F. Supp. 2d 1307, 1312 (S.D. Fla. 2003) (King, J.). The non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). If the evidence presented is merely colorable or is not significantly probative, the entry of summary judgment is proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

There are no genuine issues of material fact in dispute and Merrill Lynch has established it is entitled to judgment against the Debtor as a matter of law. Nassif's inadequate document production, failure to cooperate, failure to appear at properly noticed depositions, and failure to comply with Orders of the Court demonstrate Nassif's inability, if not deliberate refusal, to present evidence supporting triable issues of fact to support his denial of the allegations of this complaint.

### *11 U.S.C. § 727(a)(3)*

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be denied where a debtor has, among other things:

> concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11 U.S.C. §727(a)(3).

14

The purpose of §727(a)(3) is to make certain that the creditors and the trustee are given sufficient information to understand the debtor's financial condition. 6 COLLIER ON BANKRUPTCY ¶727.03[3][a], at 727-31 (15th ed. Rev. 2005). The debtor's presented records must enable his creditors to ascertain his present financial condition and to follow his business transactions for a reasonable period of time in the past to qualify as sufficient. In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996).

The party objecting to discharge carries the initial burden to show reasonable grounds to believe that the books or records are inadequate. In re Milam, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994); Fed. R. Bank. Pro. 4005. Section 727(a)(3) does not require a full accounting of every business transaction, but "there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy." In re Sowell, 92 B.R. 944, 947 (Bankr. M.D. Fla. 1988). Each case must be determined on its own facts. Milam, 172 B.R. at 375. The standard applied to a debtor who is involved in business may be more stringent than the standard imposed on a debtor who is an unsophisticated wage earner. Id.; Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992).

Once the objecting party makes an initial showing that a debtor failed to maintain or preserve adequate records from which his financial condition or business transactions could be ascertained, the burden then shifts to the debtor "to explain satisfactorily the loss." In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984); 6 COLLIER ON BANKRUPTCY ¶727.03[4], at 727-37. The debtor carries the burden of persuasion to explain the failure to keep records because the information necessary to establish such an excuse is

generally in the possession of the debtor. Meridian Bank v. Alten, 958 F.2d at 1233. A debtor must explain his or her losses or deficiencies of documentation in such a manner to convince the Court of good faith and businesslike conduct. *Id*. "The plain language of section 727(a)(3) places the burden on the debtor to justify the lack of adequate record keeping." *Id.* at 1234.

Merrill Lynch has established that Nassif concealed or destroyed, or failed to keep or preserve, recorded information from which the financial condition and business transaction of Nassif, Sunglass Shops, and Enterprises might be ascertained. He repeatedly failed to produce information despite numerous requests. The Court ordered document production on June 16, 2005 and again on July 9, 2007. The Court indicated a default would be entered for failure to comply with the Order. Nassif continued to fail to comply. The Debtor's failure to produce records, tax returns and financial information has prevented Merrill Lynch from ascertaining the Debtor's financial condition and understanding his business transactions. Merrill Lynch has carried its burden pursuant to § 727(a)(3).

The Debtor, as an experienced businessman, is held to a higher standard of care in record keeping. His extensive dealings in multiple businesses demonstrate his knowledge of the importance of keeping accurate, complete records. He is no stranger to bankruptcy procedure and the disclosure requirements through his involvement in the corporate bankruptcy cases of Sunglass Shops and Enterprises. Based on the circumstances of this case, the Debtor's failure to retain, protect, and produce his personal and business financial records was not justified. There is no genuine issue of material fact as to § 727(a)(3) and summary judgment is due to be entered in favor of Plaintiff.

### *11 U.S.C. § 727(a)(4)(A)*

Section § 727(a)(4)(A) of the Bankruptcy Code provides the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. §727(a)(4)(A). In a §727(a)(4)(A) discharge objection proceeding, the objecting party must show that the debtor made the false oath knowingly and fraudulently.  In re Chalik, 748 F.2d at 619.  The requisite intent may be established by the objecting party through inference from the facts.  6 COLLIER ON BANKRUPTCY ¶727.04[1][b], at 727-40.

The Eleventh Circuit has held a discharge should be denied where the omission from the Schedules or Statement of Financial Affairs is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991).  The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property."  In re Chalik, 748 F.2d at 618.  It is irrelevant that a debtor does not intend to injure his creditors when he makes a false statement.  Id.  "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects."  In re Sofro, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990).  It is not the job of the debtor to determine which of the questions are relevant or material. Haught v. U.S., 242 B.R. 522, 526-7 (M.D. Fla. 1999).

The Debtor made false oaths regarding his tax returns on his bankruptcy schedules by stating they were being prepared and were expected to be filed the week of June 7, 2004. The Debtor never intended to provide the tax returns of himself, Sunglass

Shops and Enterprises. Because "it is always difficult to prove that a false oath was intentionally made, an inference of such intent can be drawn from the circumstance surrounding the debtor." Haught v. U.S., 242 B.R. at 525 (citing In re Vincent, 159 B.R. 595, 597 (Bankr. M.D. Fla. 1993)).

Nassif had the requisite fraudulent intent pursuant to 11 U.S.C. §727(a)(4)(A) when he filed his original Statement of Financial Affairs executed under oath and subject to the penalty of perjury. He stated his 2002 and 2003 tax returns were being prepared to be filed over three years ago. Merrill Lynch's repeated requests for the tax returns, the lapse of three years, and the Debtor's continued failure to provide the tax returns demonstrate his fraudulent intent to stall his creditors while never intending to provide the tax returns.

Fraudulent intent was again demonstrated when Merrill Lynch was unable to serve Nassif's accountants at the addresses provided in Nassif's bankruptcy schedules. Requests for updated addresses went unanswered by the Debtor.

Nassif fraudulently made a false oath or account in a deposition when he attested that the property referred to in his financial statements consisted of a boat, when, in fact, his later testimony revealed it had been sold years before the financial statement was prepared.

A fraudulent intent can be inferred from all of these facts and circumstances. The Debtor made no attempt to timely and truthfully correct these known inaccuracies and omissions. The information provided and omitted relates to the Debtor's business transactions, his financial dealings, the discovery of assets, and the disposition of his property. The omissions from the Schedules are fraudulent and material. The Debtor

knowingly and fraudulently made false oaths. There is no genuine issue of material fact as to § 727(a)(4) and summary judgment is due to be entered in favor of Plaintiff.

### *11 U.S.C. § 727(a)(5)*

Section 727(a)(5) of the Bankruptcy Code provides that the debtor shall receive a discharge unless:

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).    Section 727(a)(5) requires debtors to adequately explain their insolvency and promotes bankruptcy policy of full disclosure. In re Dubovoy, ---B.R. ---, 2006 WL 4968124 (Bankr. M.D. Fla. 2006); In re Perry, 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000).

The plaintiff has the initial burden to demonstrate the debtor no longer has an asset he previously owned under § 727(a)(5).  The burden then shifts to the debtor to explain the disposition of the asset. In re Dubovoy, supra; In re Aoki, 323 B.R. 803, 817 (1st Cir. BAP 2005).

Uncorroborated documentation and vague explanations of losses are unsatisfactory. In re Dubovoy, supra.; In re Perry, 252 B.R. at 550 (quoting In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984))). The debtor must support his explanation with some form of corroboration sufficient to eliminate speculation as to the disposition of the assets. In re Dubovoy, Id., In re Aoki, 323 B.R. at 817.

Merrill Lynch met is burden of showing that Nassif  failed to satisfactorily explain the disposition of the assets disclosed to Merrill Lynch on his financial statement. His testimony was untruthful regarding a boat disclosed on a financial statement.  The

Debtor failed to provide corroborating documentation concerning disposition of two motorcycle and two cars. His testimony was vague and uncooperative.

Nassif failed to produce discovery despite the Court's caution that it be timely supplied or default would be entered. Nassif failed to comply, seek an extension of time, and failed to satisfactorily explain the loss of assets disclosed in his financial statements to Merrill Lynch. There is no genuine issue of material fact as to § 727(a)(5) and summary judgment is due to be entered in favor of Plaintiff.

### *11 U.S.C. § 727(a)(7)*

Section 727(a)(7) of the Bankruptcy Code bars the discharge of a debtor who:

> Has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

11 U.S.C. § 727(a)(7). Its purpose is to bind "related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings." In re Transportation Management Inc., 278 B.R. 226 (Bankr. M.D. Ala. 2002) (citing Whiteside F.S., Inc. v. Siefkin, 46 B.R. 479, 480-81 (N.D.Ill. 1985). See also Barclays/American Business Credit, Inc. v. Adams (In re Adams), 31 F.3d 389, 394 (6th Cir. 1994) (finding that corporate Chapter 11 debtor was an insider of Chapter 7 debtors for purposes of 727(a)(7).

"Insider" is defined in Section 101(31) of the Bankruptcy Code which provides in relevant part:

> (A) if the debtor is an individual—
> ***
> (iv) corporation of which the debtor is a director, officer, or person in control;

11 U.S.C. § 101(31)(A)(iv).

Treasure Island Sunglass Shops, Inc. ("Sunglass Shops") and Treasure Island Enterprises, LLC ("Enterprises"), filed Chapter 7 bankruptcy petitions in April 2004. Nassif attested that: (i) he was the sole officer, director, and shareholder of Sunglass Shops; (ii) he was the only member of Enterprises; and (iii) he was the only management employee of his corporations, Sunglass Shops and Enterprises.

Nassif committed acts in connection with the corporate cases of Sunglass Shops and Enterprises. He did not explain the disappearance of Sunglass Shop's inventory in either its bankruptcy case or the Enterprises bankruptcy. The bankruptcy schedules of Sunglass Shops indicate it had no revenue in 2002, 2003, and 2004, no inventory, accounts receivable, no other personal property. Enterprises claimed in its Schedules and Statement of Financial Affairs that, in 2003, it had only $645,000 in total revenues, and that it had only $80,000 of inventory.

Nassif failed to appear at a deposition as the corporate representative of Sunglass Shops and Enterprises. He failed to produce the 2002, 2003 and 2004 tax returns of both Enterprises and Sunglass Shops. He failed to produce documents as corporate representative of Sunglass Shops. He failed to provide correct addresses for the individuals listed as their accountants and bookkeepers.

The Debtor controlled the operations of Sunglass and Enterprises, including operational control as well as control over their records before, during and after their bankruptcy proceedings. The evidence supports the conclusion that Nassif is an "insider" pursuant to 11 U.S.C. § 101(31)(A)(iv). The Debtor has been found to have committed acts specified in Section 727(a)(3), 727(a)(4) and 727(a)(5) within one year before the date of filing his personal bankruptcy petition, or during the case, and that the Debtor is

an insider with respect to the Sunglass and Enterprise bankruptcies. There is no dispute of material fact to preclude entry of summary judgment barring discharge pursuant to 11 U.S.C. § 727(a)(7).

The Debtor has crossed the line between being merely dilatory and unresponsive, but deserving of a discharge, and committing acts and omissions that call for the denial of his discharge. For the foregoing reasons, the Debtor is not entitled to a discharge and a discharge is due to be denied pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(A), 727(a)(5) and 727(a)(7).

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Dated this 12th day of December, 2007.


_____
ARTHUR B. BRISKMAN
United States Bankruptcy Court